OTILA PRUSA ET AL., AND ANTON SEDA, ADMINISTRATOR, APPELLEES, V. FRANK J. EVERETT ET AL., APPELLANTS.

FILED APRIL 9, 1910. No. 15,943.

1. **Attorney and Client: PURCHASE OF CLIENT'S INTERESTS: SUIT TO RECOVER: EVIDENCE.** In an action against attorneys at law for the recovery of money obtained by the purchase and sale of property belonging to the estate of a deceased person, at a public sale ordered by the probate court, there being no evidence of actual fraud, it is incumbent upon the plaintiff to prove, by a preponderance of the evidence, that at the time the transaction complained of occurred the relation of attorney and client existed between the representatives of the estate and the attorneys, or one of them.

2. **Evidence** examined, and found to be insufficient to sustain the judgment of the trial court.

APPEAL from the district court for Colfax county: BENJAMIN F. GOOD, JUDGE. *Reversed.*

*John C. Martin, George W. Ayres* and *E. L. King,* for appellants.

*James A. Grimison, contra.*

BARNES, J.

Action on behalf of the minor heirs of Anton Prusa, deceased, by their guardian to recover a sum of money from the defendants as a trust fund belonging to their father's estate, and alleged to have been obtained by the defendants by conspiracy and fraud while acting as attorneys for the executrix of the last will and testament of their deceased father. The plaintiff had judgment, and the defendants have appealed.

This is a second appeal in this case. The former appeal was from a judgment of the district court sustaining a demurrer to plaintiffs' petition and dismissing the action. The hearing in this court resulted in a reversal of that judgment, and the cause was remanded to the district court for further proceedings. *Prusa v. Everett,* 78 Neb. 251. Upon the return of the mandate to the district court for Colfax county the defendants filed separate answers denying the allegations of the petition, and set up certain facts as to the nature of the transaction complained of, by way of a defense thereto. The plaintiffs replied, and a trial was had which resulted in the judgment which is here for review.

The record contains several assignments of error, but they are all embraced and may be considered in the one contention that the judgment is not sustained by the evidence.

In order to recover under the pleadings in this case, it was incumbent upon the plaintiffs to prove, by a preponderance of the evidence, that at the time certain notes given by Joseph Prusa to his brother Anton were purchased by defendant Everett, defendants were doing business as partners, and as such were attorneys for the ex-

ecutrix of the estate of Anton Prusa, deceased, or that they conspired together, while one of them was so employed, to obtain the notes in question wrongfully and in fraud of the plaintiffs' rights.

A careful reading of the record discloses the following state of facts: On the 23d day of April, 1902, in Colfax county, Nebraska, Anton Prusa died testate. At the time of his death he was the owner and holder of three notes executed by his brother, Joseph Prusa, for the sum of $1,000 each; that Joseph Prusa died on the 15th day of November, 1899, leaving an estate of the value of about $16,000; that no effort had been made by Anton Prusa during his lifetime to collect these notes; that before the death of Anton the estate of his brother Joseph Prusa had been administered; that he had not filed the notes above mentioned as a claim against the estate, and they were barred by an order of the county court entered after due and legal notice for filing claims against that estate had expired; that Mary M. Prusa, the widow of Anton Prusa, and the executrix of his estate, had declined to proceed in any manner against the estate of Joseph Prusa to collect the money due on said notes; that in December, 1902, by the advice of one Joseph Svoboda, who was her cousin, and who had been acting for her and assisting her in the settlement of her deceased husband's estate, she applied to the defendant, George W. Wertz, for advice as to that matter; that at that time Wertz was doing a law business at Schuyler, Nebraska; that Svoboda went to the office of Wertz, where he found the defendant Everett, and was informed by him that he was not connected with the defendant Wertz, and was not his partner in the law business, and was not doing business with him in any way, and that he would have to wait until Wertz, who was then absent from the office, returned; that shortly afterwards Wertz came in and was consulted by Svoboda in regard to the collection of the notes; that Wertz took the matter under advisement, and a short time thereafter went to the residence of the executrix and ad-

vised her that in his opinion the county court was without
jurisdiction to make the order barring claims in the mat-
ter of the estate of Joseph Prusa; that the administra-
tion of said estate could be set aside upon application to
the county court, and the notes in question could be
proved and allowed as claims against that estate. Wertz
also advised her to take such action, and prepared a peti-
tion for that purpose, but she refused to sign it or allow
the action to be taken, although she was fully advised of
all of the facts and of the opinion of Wertz upon the law
of the case. It further appears, however, that the execu-
trix, on the 12th day of February, 1903, applied to the
county court of Colfax county for an order for the dis-
position of the notes; that Wertz, as her attorney, advised
the court as to the facts regarding a defect in the publica-
tion of the notice for the presentation of claims against
the Joseph Prusa estate, and his view of the lack of juris-
diction of the court to make the order; that, after fully
considering the matter, the county court ordered the
notes in question sold at public auction; that due notice
was given of the time and place at which the notes would
be offered at public sale, and on the 20th day of Febru-
ary, 1903, they were sold to the defendant Frank J.
Everett for $1,025, which he paid from his own private
funds by a check on a bank at Schuyler. The check there-
upon was delivered to Wertz, and was by him turned
over to the administratrix, and the money collected
thereon went into the funds of the estate. The sale
was reported to the county court, but, as the death of
Mary M. Prusa occurred shortly thereafter, it was never
acted upon or approved. It further appears that the de-
fendant Wertz, on the 17th day of April, 1903, bought a
half interest in the notes in question from the defendant
Everett; that thereafter application was made to open
the administration of the estate of Joseph Prusa and allow
the notes as claims against said estate. The county court
set aside the original administration, and, while an ap-
peal from that order was pending, the widow of Joseph

Prusa took up the notes in question, or purchased them, for $2,600, which was paid to the defendants on October 20, 1903, and on November 18, 1905, the plaintiffs herein sued defendants to recover therefor the sum of $1,575, and interest from October 20, 1903.

Upon the question of partnership between the defendants as attorneys at law, the plaintiff introduced certain exhibits signed Everett & Wertz with a rubber stamp, and from which, without explanation, it would appear that Everett and Wertz had been the attorneys for the executrix in the matter of the settlement of her deceased husband's estate; that Wertz had been transacting business and signing papers in the name, or by the name, of Everett & Wertz. It appears, however, that when Svoboda, who, as above stated, was acting for the executrix, called upon defendant Wertz to ascertain whether or not the notes in question were collectible, he found defendant Everett in the office, and what occurred there was stated by Svoboda, in substance, as follows: I commenced telling him my case, and Mr. Frank J. Everett told me he had nothing to do with the office, that he had disposed of his business to Wertz, and that I would have to see Wertz. I went out and came back again, I think in the afternoon, and I found Mr. Wertz in the office, but Mr. Everett was not in the office at that time, and I talked to Wertz as to my mission and about collecting the notes, and he said he would look the matter up and see if they could be collected. Afterwards he reported, just in what shape I cannot remember, but, if I remember right, it was in regard to there being a certain defect in the closing of the other Prusa estate in regard to the newspaper publication, and he thought the notes could be collected. He further testified that he told the executrix that Mr. Wertz had advised that the notes could be collected; that Wertz drew a petition to open the administration of the Joseph Prusa estate; that he took it down to the executrix for her signature, and that she refused to sign the petition.

The defendant Everett testified that Svoboda came to

the office of the defendant Wertz in Schuyler to see about the collection of the notes in question; that he was in the office at the time, and that Wertz was absent. He said: "I told Svoboda that I had no further business in the law line, and that he would have to take his business to Mr. Wertz; that Mr. Wertz was not in at that time, and that he could wait until he came in, or come back again." His testimony as to his business relations with defendant Wertz was, in substance, that some time in the year 1899 he employed Wertz to assist him in his office; that he was then carrying on a law and real estate business in Schuyler; that his arrangement with Wertz was, that he was to come into the office and was to receive a salary for his services; that he paid him $800 for the first year and for the second year, and until the employment expired he paid him $1,000 a year; that their arrangement ceased about the first or second of June, 1902; that no partnership ever existed between himself and Wertz; that Wertz worked on a salary for him, and received no share of the profits of the business, and was in no way responsible for any of its losses; that he received a salary compensation for the services rendered by him during the entire time exclusively; that at the time he severed his connection with Wertz in June, 1902, and arranged to move to Kearney, he made no business arrangement with Wertz, and in no way authorized him to use his name in connection with any legal business whatever; that he never talked with Wertz upon that subject; that he never received any compensation for services rendered in a legal capacity by the defendant Wertz; that after he had purchased the notes in question he left them with Wertz for collection, because he was going away, and as an inducement to Wertz to proceed with their collection he offered to sell him a half interest in the notes; that the offer was accepted, and in that manner Wertz became interested in the transaction.

Defendant Wertz testified that he was associated with defendant Everett for something over three years; that

he was paid during the first year a salary of $800; that for the second year, and the other portion of the time he was employed by Everett, he received $1,000 a year; that about the 1st of June, 1902, he bought Everett out; that he was not associated with him as a partner, and had no share in the earnings of the office, and was not responsible for any losses in connection with the business; that his salary was not contingent upon the amount of business done, but was absolute and was payable monthly; that since the 2d of June, 1902, he had not been associated with defendant Everett in any way in the law business; that in December of that year Mr. Svoboda came to his office and said that he had some notes belonging to the estate of Anton Prusa which had been given by Joseph Prusa in his lifetime; that the estate of Joseph Prusa had been administered and the administrator discharged, and he wanted to know if there was anything that could be done to collect the notes, and said that Mr. Phelps was handling the matter. Wertz further testified as follows: "I told him I would look the matter up; that if the estate of Joseph Prusa was administered correctly it would be a bar to the collection of the notes, but that I would look into the matter." He further stated that he subsequently advised that, by reason of an irregularity in the publication of a notice in the matter of the Joseph Prusa estate, the probate court had no right to close it up; that it was his judgment that it could be opened up, and the notes could be held as a claim upon the estate; that he went to see the executrix, Mary M. Prusa, at Svoboda's request, and talked with her in the presence of her father and mother about the condition of the Joseph Prusa estate; that he told her that an action could be brought against the estate asking to have the probate order set aside and for leave to file the notes against the estate. She finally said if it did not cost too much that he should start the case. That he drew up the papers and sent them to her to be signed, and later received word that she refused, and that they wished to settle the matter among them-

selves; that he then took up the notes and gave them to the executrix in the presence of her father; that he did not see them again until they were sold on the 20th day of February to the defendant Everett; that he never advised the executor that the notes were uncollectible, but repeatedly told her he thought they could be collected; that he explained the entire matter to her as fully as he himself understood it in the presence of Svoboda; that he did not bid on the notes at the sale, and that he was not interested directly or indirectly in their purchase by defendant Everett; that he received the check from Everett for the purchase price of the notes and turned it over or assigned it to the executrix; that at the time he purchased a half interest in the notes from the defendant Everett he had been paid his fees for his services to the estate, and had no further interest in or connection with it whatever; that after he purchased a half interest in the notes he prepared a petition on behalf of himself and Everett to set aside the probate proceedings in the settlement of the estate of Joseph Prusa, and obtained an order from the county judge granting the prayer of his petition; that thereupon the parties settled with him, nd that he, together with Everett, received as a consideration for the notes the sum of $2,600.

The testimony of defendants was not disputed by any one. Neither was their veracity or credibility questioned, except by way of innuendo or suspicion, and their evidence was corroborated to some extent by the plaintiffs' witnesses. While it may be said that some of the transactions naturally excite suspicion, still the suspicious circumstances are not sufficient in themselves to overthrow the positive and uncontradicted testimony of the defendants and their witnesses. We therefore find that the plaintiffs have failed to establish a partnership relation between the defendants at the time the transactions which are complained of occurred, or that a conspiracy existed between them to unjustly or unlawfully despoil the estate

of Joseph Prusa, and deprive the plaintiffs of any of their rights, or of their interest therein.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

REESE, C. J., having been of counsel for plaintiff, took no part in the decision.